**Roxane E. MARTINEZ, Appellant**

v.

**The STATE of Texas, Appellee.**

No. 14–04–00191–CR.

Court of Appeals of Texas, Houston (14th Dist.).

July 19, 2005.

David R. Bires, Houston, TX, for appellant.

Carol M. Cameron, Houston, TX, for appellee.

Panel consists of Justices YATES, ANDERSON, and HUDSON.

## OPINION

JOHN S. ANDERSON, Justice.

A jury found appellant guilty of Class B misdemeanor theft. The trial court sentenced appellant to confinement in the Harris County Jail for ninety days, suspended the sentence and placed her on community supervision for one year, and assessed a fine of $2,000.00. On appeal, appellant raises five issues, arguing: (1) the trial court erred in charging the jury on the lesser included offense of Class B misdemeanor theft; (2) the trial court erred in denying appellant's motion to suppress her oral statements; (3) appellant's oral statements were admitted in violation of her right to remain silent as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution; (4) appellant's oral statements were admitted in violation of her right to remain silent as guaranteed by article I, section 10 of the Texas Constitution; and (5) the evidence is factually insufficient. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On the evening of June 26, 2003, appellant went to a local bar, Palmer's Ice House, where she played several games of pool with a man named Mario. Ydalia

Capetillo, the complainant, asked appellant if she could play pool with them, and appellant said yes. Capetillo then placed money on the table to play the next game. Capetillo subsequently went to the restroom, and, when she returned, appellant and Mario had begun another game of pool without her. Capetillo and appellant argued over Capetillo being excluded from the game of pool.

Around 2:00 a.m., the bar closed. Appellant walked out of the bar with Mario and Cassandra Vega, an acquaintance of appellant's.[1] Vega had come to the bar that evening with her brother, Omar Vega, and friends Julie Butanda and Melissa Gonzales. According to Vega, appellant was hugging Mario by his truck in the parking lot when Capetillo, who had also left the bar, approached them in the parking lot. Appellant and Capetillo began to argue, and their verbal argument escalated into a physical altercation.

During the altercation, Capetillo's purse and its contents fell to the ground. According to some witnesses, appellant hit Capetillo during the altercation. The testimony also is conflicting as to whether appellant *grabbed* Capetillo's purse and placed it in her car, or whether appellant *was handed* Capetillo's purse, along with other items that belonged to appellant, and she placed the purse and other items in her car. The conflicting testimony on this issue is set forth below.

Capetillo testified she saw appellant put Capetillo's purse in appellant's car. Ac-

---

1. Vega testified no officers escorted her and appellant out of the bar that evening. However, Officer Noe Hernandez, who worked security at the bar that evening, testified he walked appellant out to the parking lot. According to Hernandez, appellant had told him she was having problems with a female inside the bar, and appellant asked him to escort her out to the parking lot at the end of his shift. Hernandez testified he and another officer escorted appellant out of the bar to her car that night. However, Hernandez did not witness the altercation in the parking lot that evening.

cording to Capetillo, her purse, valued at $16.00, contained a cell phone, valued at $280.00, a wallet, valued at $56.00, and approximately $1,000.00 in cash.

Alejandra Ortaga, a waitress at the bar, saw appellant and Capetillo grabbing each other outside in the parking lot that evening. Ortaga testified she picked up the purse's contents that were strewn about the parking lot and placed them back into the purse. According to Ortaga, appellant fought with her over the purse and eventually grabbed the purse and tossed it into the back seat of her car.

Maria Flores, a waitress at the bar who also witnessed the altercation between appellant and Capetillo in the parking lot, testified she saw appellant place Capetillo's purse in her car.

Martin Rojas, a disc jockey at the bar, saw both women arguing in the parking lot, and he saw appellant take the purse from Ortaga, get in her car, and drive away.

George Gutierrez, a patron of the bar that night, saw appellant and Capetillo exchange words by the pool table inside the bar over whose game it was and also saw them both arguing in the parking lot. Gutierrez saw Ortaga and appellant pulling on the purse, like a tug-of-war.

Vega testified appellant threw a wallet, a purse, and a pool cue stick in the trunk of appellant's car, and she remembered Omar and Butanda handing appellant something. Vega did not see appellant and Capetillo struggle over the purse or hit each other.

Butanda testified she witnessed the altercation between appellant and Capetillo in the parking lot. Butanda stated she retrieved the wallet in the parking lot and handed it to appellant, believing it belonged to appellant. Appellant then, without looking at it, threw it in her trunk.

It is undisputed appellant drove away from the bar with Capetillo's purse and its contents in her car.

Officer Larry Vasqez responded to the disturbance call at the bar that evening. He interviewed Capetillo, Rojas, Flores, and Alejandra Alvarado when he arrived. Capetillo told Vasqez she was struck on the face and body by appellant, and he observed both Capetillo and Flores appeared to have been in a physical altercation.

Suzanne Gonzales, appellant's cousin who was living with appellant at the time, testified she and appellant discovered a wallet, the same one identified at trial as belonging to Capetillo, on the front seat of appellant's car after having the car detailed one Saturday. Appellant thought the wallet belonged to Gonzales, but Gonzales told her it was not hers. When they arrived home, they took the wallet inside the house. Gonzales opened it up and found approximately $200.00 in cash, some photos, and various identification and business cards. After looking through the wallet, the various cards were placed in the drawer of a china cabinet, the wallet was left on the dining room table, and the cash was placed in a petty cash drawer in appellant's bedroom. The wallet was eventually turned over to authorities, but Gonzales does not know what happened to the cards or the cash.

On September 15, 2003, Officer Jared Davis visited appellant, an associate judge at the time, at her chambers in the municipal courthouse. A bailiff let him in to see her. Davis identified himself to appellant. He told her she was a named suspect in a theft, and he was there to get her side of the story. Davis did not have a warrant and did not read her *Miranda* warnings; however, he did tell her she did *not* have to talk to him. Appellant told Davis the following:

[Appellant] had gotten into a verbal argument with one of the ladies that was in a bar called Palmer's Ice House on the night of June 26th, 2003, and that following the argument that had taken place inside the bar, [appellant] and [Capetillo] had then walked outside of the bar where they got into a physical confrontation. [Appellant] then told [Davis] that somewhere during that process, a purse, [Capetillo's] purse, had been placed—put into [appellant's] vehicle, which [appellant] later discovered the following day.

Appellant also told Davis she believed the purse was somewhere inside her home. She told him the purse had been placed in her car and that it belonged to Capetillo. Appellant told him there was approximately $200.00 cash in the purse along with some change, but she did not know where the cell phone was. She also told him she had spent the money. She explained that during the altercation with Capetillo her bracelet was torn off and her knee was injured, and appellant felt that, given her injuries and the damage to her bracelet, there was nothing wrong with spending the money. Appellant told Davis she would try to locate the purse and meet him with it the next day.

Two days later, Davis returned a voice mail message appellant had left for him the day before. Davis taped their entire telephone conversation. The tape recorded conversation was admitted into evidence and published to the jury. During their telephone conversation, appellant repeated to Davis some of what she had told him during their meeting two days earlier. Appellant tells Davis she has the wallet and purse, but she cannot find the cell phone or business cards. Appellant reiterates there was only $200.00 cash in the purse along with some change. Appellant also tells Davis Omar put Capetillo's wallet and purse in her car. Appellant asks Davis about what the other witnesses are saying appellant did, and Davis tells appellant the witnesses are saying appellant hit them. Appellant denies hitting anyone and reiterates that she did not intentionally take anything. She admits knowing the purse and wallet belonged to Capetillo and spending the money. Appellant asks Davis about possibly paying the money back, and Davis tells her the complainant is the one who would make the decision as to whether or not to press charges against appellant and the decision is not up to the police department or the prosecutor. At the end of their conversation, appellant tells Davis she brought the purse to work. Davis asks if he may call her later and come by to get the purse; appellant tells him that is "okay" and to give her a call.

Later that same day, appellant was arrested pursuant to an arrest warrant. She turned over Capetillo's wallet.[2] Appellant was charged with Class A misdemeanor theft of property valued over $500 and under $1500 and assault. Appellant pled not guilty.

During trial, over appellant's objections, her oral and tape-recorded conversations with Davis were admitted into evidence. The jury charge included instructions on Class A misdemeanor theft and on the lesser included offense of Class B misdemeanor theft, theft of property valued at $50 or more but less than $500. The jury ultimately found appellant guilty of the lesser included Class B theft offense.[3]

2. Nothing other than the wallet was ever recovered. The wallet was admitted as an exhibit during trial.

3. The jury found appellant not guilty of assault.

## DISCUSSION

### I. Lesser Included Offense

■ In issue one, appellant argues the trial court erred in charging the jury on the lesser included offense of Class B misdemeanor theft because the instruction does not meet the second prong of the test established in *Rousseau v. State*, 855 S.W.2d 666, 672 (Tex.Crim.App.1993). Appellant contends no evidence existed for the jury to find appellant guilty only of theft of property in an amount less than $500.00.

■ To determine whether a defendant is entitled to a lesser included offense instruction, a two-prong test applies: (1) the lesser included offense must be included within the proof necessary to establish the offense charged; and (2) some evidence must exist in the record that would permit a jury rationally to find that if the defendant is guilty, she is guilty only of the lesser included offense.[4] *Id.* at 672–73. Appellant concedes the first prong of the test has been met, that Class B misdemeanor theft is a lesser included offense of Class A misdemeanor theft. However, appellant argues the second prong of the *Rousseau* test has not been met because no evidence of the lesser offense of Class B misdemeanor theft existed for the jury

to find appellant guilty *only* of theft of property in an amount less than $500. Thus, appellant contends the trial court erred in instructing the jury on Class B misdemeanor theft over her objection.

A person commits the offense of theft if she unlawfully appropriates property with intent to deprive the owner of that property. Tex. Pen.Code Ann. § 31.03(a) (Vernon Supp.2005). The grade of the theft offense and the applicable punishment depend upon the value of the property stolen. *Price v. State*, 165 Tex.Crim. 326, 308 S.W.2d 47, 48 (1957). Theft of property with a value of $500 or more but less than $1500 is a Class A misdemeanor, and theft of property with a value of $50 or more but less than $500 is a Class B misdemeanor. Tex. Pen.Code Ann. § 31.03(e)(2)(A)(i), (e)(3).

Here, the complaint charged appellant with theft of Capetillo's cash money, purse, and cell phone, valued over $500.00 and under $1,500.00, a Class A misdemeanor.[5] The following jury charge instruction was submitted on the lesser included offense of Class B misdemeanor theft:

> [I]f you believe from the evidence beyond a reasonable doubt that the defendant is guilty of theft but you further believe beyond a reasonable doubt that

**4.** The State asserts on appeal the *Rousseau* two-prong test is applicable only to defense requested lesser included offense instructions and is not applicable to State requested lesser included offense instructions. The Texas Court of Criminal Appeals has held both prongs of the *Rousseau* test are applicable to the State's request for a lesser included offense instruction, and we are bound by this precedent. *Arevalo v. State*, 943 S.W.2d 887, 890 (Tex.Crim.App.1997).

**5.** The complaint and information allege appellant "on or about June 26, 2003, did then and there unlawfully appropriate, by acquiring and otherwise exercising control over property, namely, CASH MONEY, A PURSE,

AND A CELL PHONE, owned by YDALIA CAPETILLO, hereafter styled the Complainant, of the value of over five hundred dollars and under one thousand five hundred dollars, with the intent to deprive the Complainant of the property." The probable cause section of the complaint valued the items taken at $1000.00 in cash, a $280.00 cell phone, and a $20.00 purse. Class A misdemeanor theft involves property valued *at* five hundred dollars or more. Tex. Pen.Code Ann. § 31.03(e)(3). The State established a higher burden for itself by charging appellant with theft of *over* five hundred dollars. *Warren v. State*, 810 S.W.2d 202, 204 (Tex.Crim.App.1991) (en banc).

the value of the property is $50 or more but less than $500, you must give the benefit of such doubt to the defendant and find that the value of the property is $50 or more but less than $500, and you will so state in your verdict. . . .

The only physical evidence introduced at trial was Capetillo's wallet, valued at $56.00. Capetillo's cash, cell phone, and purse were never recovered. Despite appellant not having been charged with theft of the wallet, appellant on appeal argues the value of the wallet should be included in the total value of the property stolen. Appellant cites *Warren v. State,* 810 S.W.2d 202, 203–04 (Tex.Crim.App.1991) as authority for the proposition that when prosecuting theft of items in the conjunctive, the State must prove the appropriation and value of each item. Appellant is correct; however, here, appellant was not charged with theft of the wallet. Thus, the value of the wallet may *not* be included in determining the value of the property stolen. *See Lehman v. State,* 792 S.W.2d 82, 84 (Tex.Crim.App.1990) (declaring a theft conviction can never rest in whole or in part upon theft of property not alleged in the indictment as stolen).

As to the value of the three items alleged in the complaint to have been stolen, the purse, cash, and cell phone, there is conflicting testimony in the record as to the amount of cash in Capetillo's purse at the time it was stolen. The evidence showed that somewhere between approximately $200.00 and $1,000.00 in cash was in Capetillo's wallet at the time it was taken. Capetillo testified $1000.00 in cash was in her purse when it was stolen. In contrast, Davis testified appellant told him the amount of cash in the purse was approximately $200.00. Gonzales also testified the amount of cash was around $200.00. As to the value of the other two items, the purse and the cell phone, Cape-

tillo testified she bought the purse for $16.00, and the value of the cell phone was $280.00.

If the jury believed Capetillo's testimony and valued the cash at $1,000.00, a rational jury could find the total value of the purse, cell phone, and the cash together was $1296.00. However, if the jury instead believed Davis' and/or Gonzales' testimony and valued the cash at $200.00, the cash, cell phone, and purse together total $496.00. A $1296.00 value constitutes a Class A misdemeanor, and a $496.00 value constitutes a Class B misdemeanor. *See Thomason v. State,* 892 S.W.2d 8, 10–11 (Tex.Crim.App.1994). Thus, because there is some evidence in the record which, if believed, would show that appellant is guilty only of the lesser included offense of Class B misdemeanor theft, we conclude the trial court did not err in including the instruction on the lesser included offense in the jury charge.

Accordingly, we overrule appellant's first issue.

## II. Admission of Oral Statements

■ In issues two, three, and four, appellant argues the admission of her oral and recorded statements, both taken by Davis, violated her right to remain silent as guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and article I, section 10 of the Texas State Constitution. U.S. Const. amends. V, IV; Tex. Const. art. 1, § 10. Appellant argues she should have been read her *Miranda* rights because Davis' questioning of her was custodial. *See Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

■ At a suppression hearing, the trial judge is the sole finder of facts. *Arnold v. State,* 873 S.W.2d 27, 34 (Tex.Crim.App. 1993); *Hill v. State,* 902 S.W.2d 57, 59

(Tex.App.-Houston [1st Dist.] 1995, pet. ref'd). The trial judge is free to believe or disbelieve any or all of the evidence presented. *Romero v. State*, 800 S.W.2d 539, 543 (Tex.Crim.App.1990). On appeal, mixed questions of law and fact that do not turn on an evaluation of credibility and demeanor are reviewed *de novo. Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997). Here, both sides agree on the basic facts surrounding the custody question.

During the motion to suppress hearing, Davis testified he contacted appellant at her place of work on September 15, 2003 and asked to see her. At the time, appellant was a municipal court judge, and the bailiff invited Davis into appellant's chambers. Davis told appellant she was a suspect in a theft and he wanted to get her side of the story. Appellant then told Davis that on June 26, 2003 she had a verbal disagreement with Capetillo inside Palmer's Ice House and later got into a physical altercation with Capetillo outside in the parking lot of the bar. Appellant told him a purse had ended up in her car, and, after examining its contents, she knew the purse belonged to Capetillo. She further stated there was a couple hundred dollars and loose change inside the purse which she spent. At the end of their conversation, Davis told appellant to call him if she found the purse. He left her place of work without arresting appellant.

Two days later, Davis called and spoke to appellant over the telephone; appellant had left him a voice mail message the day before. Davis taped their phone conversation, unbeknownst to appellant. The substance of the telephone conversation was essentially what they had discussed in her chambers two days earlier. Appellant was arrested later that day.

For *Miranda* rights to be necessary, a police interrogation must be custodial. 384 U.S. at 444, 86 S.Ct. 1602. In order for an interrogation to be custodial, the questions must be asked after the suspect has been taken into custody or otherwise deprived of freedom of action in a significant way. *Id.*

First, appellant argues her freedom of movement was denied because she was not told she was free to leave. Second, appellant argues that after she admitted knowing who owned the wallet and spending the money, there was probable cause to arrest her, and her *Miranda* rights should have been read to her at that time. *See Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim.App.1996) (stating Texas courts recognize four general situations which may constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way; (2) when a law enforcement officer tells the suspect he cannot leave; (3) when law enforcement officials create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted; and (4) *when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave* ).

With regard to appellant's contention that she was denied freedom of movement, we conclude appellant's freedom of movement in both situations, at her office and on the telephone, was not impaired in any way. The record shows Davis' first questioning took place inside appellant's own office. Davis told her he was there to get her side of the story. She told him what happened, and Davis left her office without arresting her. Davis' second questioning took place over the telephone two days later, and appellant again discussed with Davis what had happened. Davis asked appellant if he could come by later and pick up the wallet, and she said okay. This evidence does not show appellant was

deprived of freedom of action in a significant way.

We next address appellant's contention that she was in custody because there was probable cause to arrest her and Davis did not tell her she was free to leave. For the purpose of *Miranda* warnings, the initial determination of custody depends on the objective circumstances of the interrogation, not on the subjective views held by either the investigator or the person being questioned. *Stansbury v. California*, 511 U.S. 318, 323, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994). While an investigator's beliefs may bear upon the custody issue if the beliefs are conveyed, those beliefs are only relevant as to how a reasonable person in the position of the individual being questioned would gauge her "freedom of action." [6] *Id.* at 325, 114 S.Ct. 1526. For custody to arise in the scenario where there is probable cause to arrest and law enforcement officers do not tell the suspect she is free to leave, not only must there be probable cause to arrest, but the police must manifest the information to the suspect, so that a reasonable person would believe he or she is under restraint to the degree associated with an arrest. *State v. Rodriguez*, 986 S.W.2d 326, 330 (Tex.App.—El Paso 1999, pet.

ref'd). Thus, probable cause is a factor to consider under this scenario, but it does not automatically establish custody. *Id.*; *see also Dowthitt*, 931 S.W.2d at 255. The determination of custody is to be made on an ad hoc basis, after considering all of the objective circumstances. *Dowthitt*, 931 S.W.2d at 255.

Here, Davis approached appellant, an associate municipal court judge at the time, at her place of employment, and they discussed the facts of the case in her chambers. He told her she was a suspect and he wanted to get her side of the story. Appellant told him her side of the story; she admitted knowing the purse was Capetillo's and spending the money inside the purse. At the close of the discussion in appellant's chambers, appellant told Davis she would get in touch with him about the purse's whereabouts. Two days later, Davis and appellant spoke over the telephone when Davis returned appellant's phone call. Appellant again admitted to spending the money she had found in Capetillo's purse.

There is no evidence in the record that shows appellant believed her freedom of movement was impaired to the extent of a formal arrest. Additionally, probable

---

**6.** In *Stansbury*, the United States Supreme Court discussed the effect an officer's statement to an individual that she was a suspect has on the custody issue:

> An officer's knowledge or beliefs may bear upon the custody issue if they are conveyed, by word or deed, to the individual being questioned. Those beliefs are relevant only to the extent they would affect how a reasonable person in the position of the individual being questioned would gauge the breadth of his or her "freedom of action." Even a clear statement from an officer that the person under interrogation is a prime suspect is not, in itself, dispositive of the custody issue, for some suspects are free to come and go until the police decide to make an arrest. The weight and pertinence

of any communications regarding the officer's degree of suspicion will depend upon the facts and circumstances of the particular case. In sum, an officer's views concerning the nature of an interrogation, or beliefs concerning the potential culpability of the individual being questioned, may be one among many factors that bear upon the assessment whether that individual was in custody, but only if the officer's views or beliefs were somehow manifested to the individual under interrogation and would have affected how a reasonable person in that position would perceive his or her freedom to leave.

511 U.S. at 325, 114 S.Ct. 1526 (citations omitted).

cause to arrest appellant never was manifested to appellant in any form sufficient to lead a reasonable person to believe that he or she is under arrest or under restraint to the degree associated with an arrest. *See Rodriguez*, 986 S.W.2d at 330. Considering all of the objective circumstances, we conclude appellant was not in custody when Davis questioned appellant in her chambers on September 15, 2003 or when appellant spoke to Davis on the telephone two days later on September 17, 2003. Because appellant was not in custody on either occasion, *Miranda* warnings were unnecessary.

Accordingly, we overrule appellant's second, third, and fourth issues.

### III. Factual Sufficiency

 In her fifth and final issue, appellant argues the evidence is factually insufficient to sustain the jury verdict finding her guilty of theft. Appellant asserts the disputed issue at trial was whether appellant *knowingly* took Capetillo's purse intending to deprive her of the purse and its contents. Appellant contends the evidence shows the purse was among other property handed to appellant just prior to her getting in her car and leaving, and this evidence supported appellant's defense that she did not knowingly take Capetillo's purse and did not unlawfully appropriate the property.

When an appeals court conducts a factual sufficiency review, the court views all evidence "without the prism of 'in the light most favorable to the prosecution.'" *Zuniga v. State*, 144 S.W.3d 477, 482 (Tex. Crim.App.2004) (quoting *Stone v. State*, 823 S.W.2d 375 (Tex.App.-Austin 1992, pet. ref'd, untimely filed)). There is only one question to be answered: "Considering all of the evidence in a neutral light, was a jury rationally justified in finding guilt beyond a reasonable doubt?" *Id.* at 484.

There are two ways in which the evidence may be insufficient. First, when considered by itself, evidence supporting the verdict may be too weak to support the finding of guilt beyond a reasonable doubt. Second, where there is evidence both supporting and contrary to the verdict, the contrary evidence may be strong enough that the beyond-a-reasonable-doubt standard could not have been met. *Id.* at 484–85.

The jury found appellant guilty of Class B misdemeanor theft. A person commits Class B misdemeanor theft if she unlawfully appropriates property valued at $50 or more, but less than $500, with intent to deprive the owner of the property. TEX. PEN.CODE ANN. § 31.03(a), (e)(2)(A)(i); *see Thomason v. State*, 892 S.W.2d 8, 10–11(Tex.Crim.App.1994).

It is undisputed appellant drove away with Capetillo's purse and its contents in her car. However, some witnesses testified appellant *took* the purse and put it in her car, and other witnesses testified appellant *was handed* the purse and put it in her car. The following witnesses testified appellant *took* the purse: (1) Capetillo testified she saw appellant put her purse in her car; (2) Ortaga testified appellant fought with her over the purse, grabbed the purse from her, and tossed it into the back seat of her car; (3) Flores testified she saw appellant place the purse in her car; (4) Martin Rojas saw appellant take the purse from Ortaga, get in her car, and drive away; (5) Gutierrez saw Ortaga and appellant pulling on the purse, like a tug-of-war; and (6) Davis testified appellant admitted she knew the purse belonged to Capetillo, and she felt justified in spending the money. In contrast, three witnesses testified appellant was *handed* the purse or was unaware the purse was in her car. Vega testified appellant threw a wallet, a purse, and a pool cue stick in the trunk of

her car, and she remembered her brother Omar and Butanda handing appellant these items. Butanda testified she picked up the wallet in the parking lot and handed it to appellant, thinking it belonged to appellant. Gonzales testified appellant did not know who the wallet belonged to when it was discovered in appellant's car until after they examined its contents.

The jury is the finder of fact, and it is not the appellate court's role to "find" facts or substitute its judgment for that of the jury. *Zuniga*, 144 S.W.3d at 482. What weight to give conflicting testimony is within the sole province of the jury, because it turns on an evaluation of credibility and demeanor. *Cain v. State*, 958 S.W.2d 404, 408–09 (Tex.Crim.App. 1997). "A decision is not manifestly unjust merely because the jury resolved conflicting views of the evidence in favor of the State." *Id.* at 410. The jury was free to believe or disbelieve the witnesses as they chose. *Id.*

After considering the evidence in a neutral light, we conclude the evidence supporting the verdict is not too weak to support the finding of guilt beyond a reasonable doubt, and the evidence contrary to the verdict is not so strong that the beyond a reasonable doubt standard could not have been met. *Zuniga*, 144 S.W.3d at 484–85. Accordingly, we hold the evidence is factually sufficient to support appellant's conviction for Class B misdemeanor theft.

We overrule appellant's fifth issue.

## CONCLUSION

The judgment of the trial court is affirmed.