

In The

# Court of Appeals

## Seventh District of Texas at Amarillo

_____

No. 07-14-00209-CR

_____

JEFFREY ALLEN WEST, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 84th District Court
Hutchinson County, Texas
Trial Court No. 11,074; Honorable William D. Smith, Presiding

April 11, 2016

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Following a plea of not guilty, Appellant, Jeffrey Allen West, was convicted by a jury of evading arrest or detention with a vehicle, enhanced to a second degree felony,[1] and theft of copper valued at less than $20,000, a state jail felony.[2]  Punishment was

---

[1] TEX. PENAL CODE ANN. §§ 38.04(a), 12.42(a) (West Supp. 2015).

[2] TEX. PENAL CODE ANN. §§ 31.03(a), 31.03(e)(4)(F)(iii) (West Supp. 2015).

assessed at thirteen years confinement and a $3,000 fine for the evading arrest conviction and eighteen months in a state jail facility and a $10,000 fine for the theft of copper conviction. The sentences were ordered to run concurrently. By two issues, Appellant (1) challenges the sufficiency of the evidence to support his theft conviction and (2) asserts he could not have been found guilty of theft of copper because he was indicted for theft of wire.[3] Appellant does not raise any issue challenging his conviction for evading arrest. We affirm.

BACKGROUND

On February 28, 2013, an undercover drug interdiction detective was conducting surveillance on a truck parked in front of a residence.[4] At the time, the registration sticker on the truck was expired; however, his interest in the truck was for a narcotics investigation. While on surveillance, the detective received a tip from another officer that a truck matching the description of the one he was watching was suspected in a copper theft. When the truck began to drive away from the residence, the detective was poised to initiate a traffic stop for the expired registration. According to the detective, the driver, later identified as Appellant, sped away through a residential area driving recklessly and committing numerous traffic offenses. He failed to navigate a turn and crashed the truck into a utility pole, at which point he fled on foot. The detective gave chase and ordered Appellant to stop and get on the ground. Appellant was taken into custody and arrested for evading arrest or detention with a vehicle.

---

[3] The indictment charges Appellant with theft of "copper wire."

[4] The detective testified that although he was in an undercover vehicle, he was dressed in uniform that day.

Per policy before towing a vehicle, an inventory was made of the contents of the truck. The detective found a large amount of copper wire in a tool box attached to the bed of the truck. Xcel Energy had recently contacted the sheriff's department about a theft of copper wire at its Industrial Substation; therefore, suspecting the copper found in the bed of the truck had been stolen, the detective contacted Robby Calhoun, an Xcel Energy foreman at the time of the theft, to identify the copper.[5]

Calhoun, an electrician, testified that he helped build the substation in Borger and then maintained it. Substations are fenced in and have signs posted to keep persons out. He explained the workings of a high-voltage substation and how a ground wire provides protection. He described the ground wire as a "4-ought copper wire, solid copper" which is buried in the ground. His experience with previous copper thefts was that the culprits would cut off the copper and "then pull it back as far as they could until it hit something and they couldn't pull anymore and they would cut it off there."

During his testimony, over chain-of-custody objections, Calhoun identified some of the copper found in the truck's toolbox as "the copper that we would use to ground our substations." State's Exhibits 40 and 41 were two boxes containing copper recovered from the toolbox of the truck Appellant was driving.[6] Calhoun described it as "4/0 copper ground wire, which is 100-percent copper." He then testified about two different types of copper, an older copper that is "19/9" and a newer copper that Xcel was using.

---

[5] At the time of trial, Calhoun was no longer employed by Xcel Energy.

[6] Not all the copper found belonged to Xcel Energy. Calhoun testified that State's Exhibit 42, copper that had blue paint on it, did not belong to Xcel Energy.

Calhoun testified that the fence at the Industrial Substation had been cut and a large amount of copper had been stolen. The Industrial Substation was owned by Xcel Energy and he was certain the copper was owned by Xcel Energy. He confirmed that the thicker copper, the 19/9, "most definitely" came from that substation because it was starting to turn black from the dirt around the carbon black plant and "there's no other subs that have that carbon around them."[7] Although Calhoun estimated that the scrap copper contained in State's Exhibits 40 and 41 was worth approximately $100 as to each box, he concluded that it would cost "thousands of dollars," but less than $20,000, to replace the copper stolen from the substation.

Appellant testified at trial. He claimed the truck he was driving at the time of his arrest was borrowed from a friend. He also claimed another friend of his sold him approximately thirty-five pounds of copper that same day for fifty dollars. Appellant testified he had been buying and selling copper and other materials for years.[8]

After dropping off his friend, he drove to another friend's residence.[9] He testified a white truck passed him slowly "creeping" by. He was concerned about the truck because his friend's ex-boyfriend had made threats against him. Not realizing the truck was an undercover truck, he fled in the borrowed truck. After crashing the truck into the utility pole, he ran away and did not stop until the detective announced himself. He then

---

[7] Calhoun could not rule out the possibility that carbon black is also present around oil well sites and railroads but he was unaware of any sites in the area with that amount of carbon black.

[8] Appellant was unemployed and his sole source of income was buying and selling metals, which included copper.

[9] The residence was the one the detective had been surveilling as a narcotics house.

realized he was being pursued by a law enforcement officer and raised his hands and submitted to being restrained.

By his first issue, Appellant argues the evidence is insufficient to support a theft conviction. We disagree.

STANDARD OF REVIEW

The only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense the State is required to prove beyond a reasonable doubt is the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 33 S. Ct. 2781, 61 L. Ed. 2d 560 (1979). *See Adames v. State*, 353 S.W.3d 854, 859 (Tex. Crim. App. 2011); *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under that standard, this court considers all the evidence in the light most favorable to the verdict and determines whether, based on that evidence and reasonable inferences to be drawn therefrom, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson*, 443 U.S. at 318-19.

The trier of fact is the sole judge of the credibility and weight to be attached to the testimony of a witness. We permit a jury to draw multiple reasonable inferences from facts as long as each inference is supported by the evidence presented at trial. *Hooper v. State*, 214 S.W.3d 9, 16-17 (Tex. Crim. App. 2007).[10] We measure the sufficiency of the evidence by the elements of the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). In our review, we

---

[10] Under modern criminal law, a rule against inference stacking is unnecessary. *Hooper*, 214 S.W.3d at 15; *Travis v. State*, No. 07-14-00123-CR, 2016 Tex. App. LEXIS 2859 n.3 (Tex. App.—Amarillo March 16, 2016, no pet. h.) (mem. op.) (not designated for publication).

must evaluate all of the evidence in the record, both direct and circumstantial, whether admissible or inadmissible. *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999), *cert. denied*, 529 U.S. 1131, 120 S. Ct. 2008, 146 L. Ed. 2d 958 (2000). Furthermore, we must give deference to the responsibility of the trier of fact to fairly resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13.

ANALYSIS

A person commits theft if he unlawfully appropriates property with intent to deprive the owner of the property. TEX. PENAL CODE ANN. § 31.03(a) (West Supp. 2015). If the value of the property is less than $20,000 and the property is copper, it is a state jail felony. *Id.* at § 31.03(e)(4)(F)(iii).

When a defendant is in possession of recently stolen property and fails to provide a reasonable explanation, the trier of fact may draw an inference of guilt as to the theft of that property. *Poncio v. State*, 185 S.W.3d 904, 905 (Tex. Crim. App. 2006). If, however, a defendant offers an explanation for his possession of recently stolen copper, the record must demonstrate that the defendant's explanation at the time his possession is called into question is either false or unreasonable before the evidence will support the theft conviction. *Jackson v. State*, 12 S.W.3d 836, 839 (Tex. App.—Waco 2000, pet. ref'd). Whether an explanation is true or reasonable is a question for the trier of fact. *Dixon v. State*, 43 S.W.3d 548, 552 (Tex. App.—Texarkana 2001, no pet.).

The evidence established that the copper recovered in the truck's toolbox was unlawfully appropriated from Xcel Energy's Industrial Substation. There was no direct evidence that Appellant was seen stealing the copper. However, circumstantial evidence is as equally probative as direct evidence in establishing guilt. *Lashley v. State*, 401 S.W.3d 738, 747 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Appellant claimed to have bought the copper from a friend and testified he had no knowledge it was stolen. However, Appellant acknowledged that his friend was in prison for stealing copper and had been to prison "a couple" of times for that offense. The jury had the responsibility of resolving inconsistencies in the evidence and could have found that Appellant's explanation for possessing the stolen copper was unreasonable.[11] The jury found against Appellant on the issue of credibility and weight of the testimony. Given the facts of this case, the jury was presented with sufficient evidence to permit it to infer that Appellant's possession of stolen copper was a circumstance of guilt. Appellant's first issue is overruled.

By his second issue, Appellant asserts he could not have been found guilty of theft of copper because the indictment charged him with theft of copper wire. Relying on an amendment to the statute made in 2011,[12] he argues that he was guilty *only* of the lesser included offense of theft of wire valued at approximately $200, a Class B

---

[11] During deliberations, the jury sent an inquiry to the trial court asking "What did the defendant state in his testimony regarding his knowledge of the criminal history of the person from whom the defendant alleges he purchased the copper[?]"

[12] *See* Act of May 29, 2011, 82nd Leg., R.S., ch. 1234, § 21, 2011 Tex. Gen. Laws 3302, 3311. Prior to the amendment, Penal Code § 31.03(e)(4)(F) provided that theft was a state jail felony if "the value of the property stolen [was] less than $20,000 and the property stolen [was] insulated or noninsulated tubing, rods, water gate stems, *wire*, or cable that consist[ed] of at least 50 percent" copper. Effective September 1, 2011, the amendment simplified that provision to provide that theft is a state jail felony if "the value of the property stolen [was] less than $20,000 and the property stolen [was]" copper.

misdemeanor. *See* TEX. PENAL CODE ANN. § 31.03(e)(2)(A) (West Supp. 2015) (providing that theft is a Class B misdemeanor if "the value of the property stolen is $100 or more but less than $750). We disagree.[13]

Relying on *Bowen v. State*, 374 S.W.3d 427 (Tex. Crim. App. 2012), Appellant argues this court has the power to reform a conviction for a greater offense to a lesser included offense even where the jury charge did not include such a request. While Appellant correctly interprets *Bowen*, we find it is inapplicable to the circumstances of this case.

Theft of copper or copper wire is simply a theft under section 31.03(a), (b)(1) of the Texas Penal Code. *See Choice v. State*, 351 S.W.3d 77, 81 n.1 (Tex. App.—Tyler 2011, pet. ref'd).[14] After the 2011 amendment to section 31.03(e)(4)(F), it is irrelevant whether copper or copper wire was alleged to have be stolen; rather, it is the value of copper stolen that determines the range of punishment. Similarly, before the 2011 amendment, the content of copper was not an element of the offense; the content of copper merely determined the penalty grade. *Campbell v. State*, 5 S.W.3d 693, 699 (Tex. Crim. App. 1999) (*en banc*). Appellant has not cited us to a case and we have found none where a conviction for theft of copper wire was treated as a lesser included offense of theft of copper. He is not entitled to have his conviction reformed to reflect a Class B misdemeanor with a lesser range of punishment. Issue two is overruled.

---

[13] The State asserts that charging Appellant with theft of copper wire may have served to increase its burden of proof, but that copper wire is still copper for purposes of the statute.

[14] We recognize that some courts may treat theft offenses carrying a lesser penalty as lesser included offenses of theft. *Franklin v. State*, 219 S.W.3d 92, 96 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (theft of cell phones from a retail store); *Martinez v. State*, 171 S.W.3d 422, 427-28 (Tex. App.—Houston [14th Dist.] 2005, no pet.) (theft of a purse).

CONCLUSION

The trial court's judgment of conviction for evading arrest or detention with a vehicle, enhanced, and for theft of copper is affirmed.[15]


Patrick A. Pirtle
Justice


Do not publish.

---

[15] In this case the trial court entered a single judgment reflecting both convictions and Appellant appealed that judgment—even though he only challenged the theft conviction. To avoid this kind of confusion, the preferred method for entering judgment in a multiple conviction case is to use the Standard Judgment Forms promulgated by the Office of Court Administration, using one judgment form for each conviction.