Gregory Oneil PRUITT, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–83–00878–CR.

Court of Appeals of Texas, Dallas.

Dec. 7, 1984.

Jerry R. Birdwell, Tim Tyner, Dallas, for appellant.

Henry Wade, Dist. Atty., Celia V. Barr, Asst. Dist. Atty., Dallas, for appellee.

Before STOREY, VANCE and ALLEN, JJ.

STOREY, Justice.

Gregory Oneil Pruitt appeals from a conviction of aggravated robbery complaining that the trial court committed reversible error in (1) admitting testimony of appellant's statements to police, (2) admitting evidence obtained pursuant to statements appellant made to the police, (3) failing to make a voluntariness finding on appellant's statements to the police, and (4) admitting testimony of a police lineup identification. The significant issue before the court is whether the error in admitting testimony of appellant's statements to the police taken in violation of the appellant's *Miranda* rights was rendered harmless by reason of the overwhelming weight of the evidence against appellant. We hold that on the facts of this case the error was harmless and that the remainder of appellant's points present no error. Accordingly, we affirm.

Evelyn Allison, the manager of the Cleanarama Cleaners, was the victim of the robbery. She described the robber to the police as a black man with medium type skin, about six feet tall and one hundred seventy to eighty pounds. The man was clean-shaven, wore a clear shower cap over his hair and had distinctive eyes. Allison also described the gun he was carrying— dark blue with a very short-nosed barrel. Allison testified that she observed the appellant at close range for about five to six minutes and she positively identified appellant in court based on her observation at the time of the robbery. Cross-examination revealed only that Allison hesitated at a live lineup before deciding that a man who looked similar to the appellant was not

the appellant, and that at a six-picture line-up she eliminated four men but hesitated before eliminating the fifth and identifying the sixth as appellant.

Shelby Harbour testified that he was the police investigator who showed Allison the picture lineup and arrested appellant later on the day of the robbery. Officer Harbour and his partner stopped appellant as he was driving down Lemmon Avenue. A clear shower cap was found in appellant's car.

Next, John Westphalen testified that he was the officer who took the complainant's story and interviewed appellant the next day. His testimony before the jury regarding his conversation with appellant was as follows:

Q. Without going into the contents of the conversation, did he say anything to you about where he had been living?

A. Yes, he did.

Q. And what did he say about that?

A. He said he had been staying part-time at an apartment house on Simpson.

Q. Did he give you an address on Simpson?

A. No, he gave us directions and gave us the apartment number.

Then the officer testified that he and other officers went to that apartment where Alisha Adams answered and consented to a search of the premises. Two guns and a brown leather coat were found as a result of the search. One of the guns was put in evidence and the complainant testified to its similarity to the gun held on her.

Next, M.P. Southall testified about the search of the apartment and that as a result of a conversation with Alisha Adams he learned that appellant stayed there part-time. No evidence was introduced for the defense.

A hearing on the voluntariness of appellant's statements to the police was held out of the jury's presence in connection with another case and was incorporated verbatim into the record of this case. At this hearing John Westphalen testified that he and another officer interviewed the appel-lant on the day following the robbery. After appellant was given his *Miranda* rights and indicated that he understood them, Westphalen testified on direct examination by the State that:

Q. Did he indicate that he wanted to invoke them at that time?

A. He just said that he understood them at that time.

Q. And then what happened?

A. We started talking to him about the robberies that he had been charged with and we were attempting to find out who the second man was with him on his robberies.

Q. And what did he say to you?

A. For a few minutes he said he didn't want to talk. He talked all he was going to talk and we talked probably for about five or six minutes and then he finally said that he would give us the name of the second man.

Also at this hearing the following dialogue later ensued between the trial judge and Westphalen:

THE COURT: You say that Mr. Lewis gave him all of the *Miranda* warnings. Is that right?

THE WITNESS: That's right.

THE COURT: All right. Now, at some time I may have heard you wrong. Did you say that the Defendant had said he didn't want to talk anymore about this offense, that he had done all the talking that he wanted to do?

THE WITNESS: That's right.

THE COURT: All right. What did you do then? Did you talk to him about the offense anymore at that point?

THE WITNESS: We kept talking to him about the second man involved in the robbery and he finally said, I know I'm going back to prison. I will go ahead and tell you.

Later in the voluntariness hearing, the following exchange was had on cross-examination and the Court interjected:

Q. Okay. But he said he didn't want to talk. I am just—I am just trying to understand you, Officer, as to what your

interpretation is of the *Miranda* warnings—

THE COURT: Excuse me, counsel, isn't his interpretation more or less irrelevant in light of what the Court's interpretations have been? ...

\* \* \* \* \* \*

*If that is a violation of the Defendant's rights as far as terminating the interview,* it more or less stands or falls on its own merits, regardless of what this officer's interpretation is, it would seem to me. (emphasis added)

At the conclusion of the hearing the court found that the defendant had been apprised of his constitutional rights and that he had knowingly and intelligently waived those rights. The trial judge further found that "the requirements of the Texas laws related to oral confessions have been complied with" and held the conversation between the defendant and Westphalen admissible.

Appellant first argues that:

the court committed error in admitting over appellant's objection, testimony that the appellant, Gregory Oneil Pruitt, gave ... an address at which [he] had been staying after the appellant previously stated that he had "talked all he was going to talk" in that same denied appellant his protection against self-incrimination under the 5th Amendment of the United States Constitution and Art. 1, section 9, of the Texas Constitution, and appellant his right to "due process of law" guaranteed by the 14th Amendment of the United States Constitution and Art. I, section 19, of the Texas Constitution.

■ The State responds that error was not properly preserved for appeal: "[I]n order to complain about the admissibility of a confession, even in regard to a violation of *Miranda*, ... there must be an objection in the trial court. Furthermore, the objection, if any, must have called the attention of the trial court to the particular complaint raised on appeal." *Ex parte Bagley*, 509 S.W.2d 332, 333 (Tex.Crim.App.1974). However, the law is clear that "when the court hears objections to offered evidence

out of the presence of the jury and rules that such evidence shall be admitted, then in that event such objections shall be deemed to apply to such evidence when it is admitted before the jury without the necessity of such objections being renewed in the presence of the jury." TEX.CODE CRIM.PROC.ANN. art. 40.09 § 6(d)(3) (Vernon Supp.1984); *Harryman v. State*, 522 S.W.2d 512, 516 (Tex.Crim.App.1975).

The record here does not reveal that the appellant, in the voluntariness hearing, made the usual formal objection to the complained-of statements before the trial judge made his ruling on admissibility. However, the record does show that the pre-eminent focus of the hearing was that the police officers continued questioning the appellant after the appellant stated he did not want to talk further. The appellant's line of cross-examination firmly established that the appellant's *Miranda* rights and his right to terminate the interview at any time had been violated. The interjections of the court itself show that appellant called this issue to the attention of the trial court. Furthermore, from the court's ruling to the effect that appellant had waived his *Miranda* rights, it is apparent that the court considered the objection on that ground to be adequately presented.

Additionally, although the State cites *White v. State*, 591 S.W.2d 851 (Tex.Crim. App.1980), for the proposition that an objection on point not raised at trial will not preserve error for appeal, we observe that the court in that case went to lengths to address the appellant's contention that his right to silence was not scrupulously honored. The court expressly considered that point as unassigned error "in the interest of justice" under TEX.CODE CRIM.PROC. ANN. art. 40.09 § 13 (Vernon 1979) (amended 1981). *White v. State*, 591 S.W.2d at 861. Thus, we hold that the error was sufficiently preserved and proceed to the merits of appellant's contention.

"[T]he admissibility of statements obtained after the person in custody has decided to remain silent depends under *Mi-*

*randa* on whether his 'right to cut off questioning' was 'scrupulously honored.'" *Michigan v. Mosley*, 423 U.S. 96, 104, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975). Whatever "scrupulously honored" does not mean, at the very least it means that "if the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda v. Arizona*, 384 U.S. 436, 473–74, 86 S.Ct. 1602, 1627, 16 L.Ed.2d 694 (1966).

▮ As the State urges, *Miranda* cannot "sensibly be read to create a per se proscription *of indefinite duration* upon any further questioning by any police officer on any subject, once the person in custody has indicated a desire to remain silent." *Michigan v. Mosley*, 423 U.S. 96, 102–03, 96 S.Ct. 321, 326, 46 L.Ed.2d 313 (1975) (emphasis added). However, in this case, as in *Hearne v. State*, "[w]e are not here confronted with the question of at what point in time and under what circumstance questioning may resume after the right to remain silent has been invoked since the testimony of the officer reflects that there was never any cessation of the interrogation." *Hearne v. State*, 534 S.W.2d 703, 706 (Tex.Crim.App.1976). As Westphalen admitted, interrogation never ceased upon appellant's invocation of his right to remain silent. Thus, this right was not scrupulously honored and admission of any statements made during that session was error. *See Hearne v. State*, 534 S.W.2d at 703.

▮ Nevertheless, where evidence of guilt is overwhelming and the prejudicial effect of improperly admitted evidence is insignificant by comparison, the admission of that evidence is harmless error. *Schneble v. Florida*, 405 U.S. 427, 430, 92 S.Ct. 1056, 1058, 31 L.Ed.2d 340 (1972). This is true even where the error is on a constitutional ground. *Schneble*, 405 U.S. 427, 92 S.Ct. 1056, 31 L.Ed.2d 340; *Chambers v. Maroney*, 399 U.S. 42, 53, 90 S.Ct. 1975, 1982, 26 L.Ed.2d 419 (1970). "Before an error of constitutional dimension can be held to be harmless error, however, the

reviewing court must be able to declare that it was harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Cole v. State*, 484 S.W.2d 779, 783 (Tex.Crim.App.1972).

In appellant's case we have the *clear and positive* identification of the appellant by the complainant. The complainant's observations of the appellant occurred not only after he had drawn his gun and placed her in great fear, but also before the robbery occurred, during the time when the appellant approached the cleaners and was apparently only another customer. The complainant testified that it is her practice to study and learn her customers' faces so that she can address them by name, which encourages repeat business. She identified the appellant from a picture in a lineup the evening of the robbery. In addition to this, a clear plastic shower cap was found in appellant's car upon his arrest the day of the robbery. Officer Southall testified that appellant was known to have stayed at the same apartment where a gun of characteristics similar to the gun complainant faced was found.

▮ The appellant presented no evidence in his own behalf. Furthermore, cross-examination did not significantly affect the weight of the State's evidence. The only evidence admitted as a result of the police interrogation was the fact that the *appellant* gave the police a location where he had been staying. The location was corroborated by the properly admitted testimony of officer Southall. When improperly admitted evidence is properly in the record from another source, the improper admission results in harmless error. *Brasfield v. State*, 600 S.W.2d 288, 296 (Tex.Crim.App.1980). Thus the only improperly admitted evidence that was not corroborated by competent evidence was that it was appellant himself who gave the police the information. In reviewing the evidence we conclude that any prejudicial effect of the erroneously admitted evidence is overwhelmingly outweighed by the evi-

542

dence of guilt, and therefore that the error was harmless beyond a reasonable doubt.

■ Appellant also complains of the trial court's failure to make a finding on voluntariness of the statements made to the police. Indeed the trial court did not make express written findings on voluntariness as required by TEX.CODE CRIM.PROC. ANN. art. 38.22, § 6 (Vernon 1979). Because we hold that admission of the statements was a violation of *Miranda* but was harmless error in light of the overwhelming weight of the evidence, the error this point presents is also rendered harmless.

■ Next appellant complains the trial court erred "in admitting into evidence, over appellant's objections, State's exhibits nos. 2 and 3" because that evidence was obtained pursuant to information obtained in violation of appellant's right to remain silent. State's exhibit 2 is marked in the record as "consisting of a large diagram" and was identified by the complainant as her drawing of the inside of the Cleanarama Cleaners as it appeared on February 23, 1983. Obviously this evidence was not obtained pursuant to information from the appellant; the diagram was properly admitted. State's exhibit 3 is a handgun that was found in the search of the apartment on Simpson street, later identified by the complainant. No objection was made regarding the admissibility of the gun at the pre-trial hearing. The only objection at trial to this evidence was on the grounds that the gun was not linked to the robbery because the complainant only testified that it looked like the gun and did not testify that it was the same gun. Appellant cannot preserve error on a different ground on appeal than was made at trial. *Euziere v. State*, 648 S.W.2d 700, 703 (Tex.Crim.App. 1983).

■ Lastly, appellant complains the court erred in admitting testimony of a police lineup identification "because it was not shown that appellant waived his right to counsel, the line-up having been conducted without the presence of defendant's counsel" and that this was a violation of appellant's 6th Amendment right to counsel and 14th Amendment right to due process. We conclude, however, that no error is presented because the record does not show that appellant was formally charged with the commission of this offense before the line-up was held. Thus, appellant has not shown he was entitled to counsel at the complained of line-up. *Kirby v. Illinois*, 406 U.S. 682, 92 S.Ct. 1877, 32 L.Ed.2d 411 (1972); *Beaupre v. State*, 526 S.W.2d 811, 814 (Tex.Crim.App.), *cert. denied*, 423 U.S. 1037, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975).

Affirmed.