

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

---

No. 06-13-00035-CR

---

TIMOTHY HUTCHISON, Appellant

V.

THE STATE OF TEXAS, Appellee

---

On Appeal from the 188th District Court
Gregg County, Texas
Trial Court No. 41,224-A

---

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Chief Justice Morriss

# O P I N I O N

Police had two warrants—one to arrest Timothy Hutchison and the other to search a house at 213 South Houston Street in Longview—when they stopped the vehicle Hutchison was driving and advised him of the warrants. During Hutchison's ensuing interactions with officers and before he was warned of his *Miranda*[1] rights, he made two notable statements and handed officers the keys to the house and the room within which contraband was located. The State used the two statements and the delivery of the keys as part of the evidence in Hutchison's jury trial on two counts of possession of a controlled substance with intent to deliver. From his conviction and sentence of fifty years' imprisonment, Hutchison appeals, claiming legally insufficient evidence that he possessed the contraband, error that the trial court instructed the jury on joint possession, and error that the trial court admitted into evidence the two statements and the delivery of the keys.

In the first statement in question, made apparently without specific inquiry by police but after officers stated that the search warrant authorized a search of the house, Hutchison stated, "I've just been doing what I've been doing for a little extra money."[2] The second statement was uttered after Hutchison and officers had arrived at the house and after the officers had told Hutchison that, if "[y]ou tell us where [the] stuff is at, you know, we'll see what we can do, you know, help you out if you'll help us out." In the resulting second statement, Hutchison told the officers "that everything he had was in his bedroom in a safe or in his closet." Hutchison also

---

[1]*Miranda v. Arizona*, 384 U.S. 436, 444 (1966).

[2]An earlier statement by Hutchison is not in issue here. When initially stopped and informed of a warrant, Hutchison advised that "he didn't have anything in the vehicle" and that the police were "welcome to look."

2

provided the officers with his keys. One of the keys unlocked the front door to the house, but, most importantly, another key unlocked a padlock on the bedroom door. In that bedroom's closet, the police discovered an open safe containing 11.58 grams of methamphetamine, 32.51 grams of gamma-hydroxybutyrate (GHB), and some Xanax pills—the discovery resulting in Hutchison's conviction. It is uncontested that Hutchison was never given *Miranda* warnings.

We reverse the trial court's judgment and remand this case to the trial court for further proceedings consistent with this opinion, because—although (1) the evidence is legally sufficient, and (2) the jury instruction was not erroneous—(3) the record does not demonstrate the lack of harmful error in the admission of evidence.

*(1)     The Evidence Is Legally Sufficient*

Hutchison claims the evidence is legally insufficient to link him to the contraband. According to Hutchison, the State proved only that drugs were found at 213 South Houston Street, a house owned by Hutchison's mother as rental property. Hutchison claims no rational juror could have found beyond a reasonable doubt that he had actual care, custody, control, or management of the drugs.

In reviewing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the jury's verdict to determine whether any rational jury could have found the essential elements of the offense beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *Hartsfield v. State*, 305 S.W.3d 859, 863 (Tex. App.—Texarkana 2010, pet. ref'd). We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the

3

responsibility of the jury "to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007) (citing *Jackson*, 443 U.S. at 318–19).

The State had the burden to prove Hutchison "knowingly . . . possess[ed] with intent to deliver a controlled substance in Penalty Group I."[3] *See* TEX. HEALTH & SAFETY CODE ANN. § 481.112 (West 2010). Possession is statutorily defined as "actual care, custody, control, or management." TEX. PENAL CODE ANN. § 1.07(a)(39) (West Supp. 2013). The crime is established by showing that Hutchison exercised control, custody, management, or care over the drugs and that he knew the matter possessed was contraband. *See Evans v. State*, 202 S.W.3d 158, 161 (Tex. Crim. App. 2006); *see also* TEX. PENAL CODE ANN. § 1.07(a)(39).

> When the accused is not in exclusive possession of the place where the substance is found, it cannot be concluded that the accused had knowledge of and control over the contraband unless there are additional independent facts and circumstances which affirmatively link the accused to the contraband.

*Deshong v. State*, 625 S.W.2d 327, 329 (Tex. Crim. App. [Panel Op.] 1981).

Mere presence at the location where drugs are found is insufficient, by itself, to establish actual care, custody, or control of those drugs. *Evans*, 202 S.W.3d at 162. Presence or proximity to drugs, however, when combined with other direct or circumstantial evidence, may be sufficient to establish control, management, custody, or care provided the proof amounts to more than a strong suspicion. *Id.* Requiring that evidence link a defendant with the contraband

---

[3]The indictment alleged only the statutory alternative of possession with intent to deliver. *See Johnson v. State*, 364 S.W.3d 292, 294 (Tex. Crim. App. 2012) ("[T]he failure to prove the statutory language pled renders the evidence legally insufficient to support the conviction."); *Gollihar v. State*, 46 S.W.3d 243, 254 (Tex. Crim. App. 2001) ("[W]hen the controlling statute lists several alternative acts intended by the defendant and the indictment limits the State's options by alleging certain of those intended acts, the hypothetically correct charge should instruct the jury that it must find one of the intended acts alleged in the indictment.").

4

protects "the innocent bystander from conviction based solely on his fortuitous proximity to someone else's drugs." *Poindexter v. State*, 153 S.W.3d 402, 406 (Tex. Crim. App. 2005). Texas courts have recognized the following links as factors that tend to establish a person's possession of contraband:

> (1) the accused's presence when a search is conducted; (2) whether the contraband was in plain view; (3) the accused's proximity to and the accessibility of the narcotic; (4) whether the accused was under the influence of narcotics when arrested; (5) whether the accused possessed other contraband or narcotics when arrested; (6) whether the accused made incriminating statements when arrested; (7) whether the accused attempted to flee; (8) whether the accused made furtive gestures; (9) whether there was an odor of contraband; (10) whether other contraband or drug paraphernalia were present; (11) whether the accused owned or had the right to possess the place where the drugs were found; (12) whether the place where the drugs were found was enclosed; (13) whether the accused was found with a large amount of cash; and (14) whether the conduct of the accused indicated a consciousness of guilt.

*Wright v. State*, 401 S.W.3d 813, 818–19 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd); *see Evans*, 202 S.W.3d at 162 n.12.

Hutchison argues he was present at the location only because the officers escorted him to the location. Hutchison further points out that the contraband was not in plain view and that there is no evidence that he was under the influence of the contraband, attempted to flee, made furtive gestures, or lived at the location. Although drug paraphernalia was found at the house, this paraphernalia was never directly linked to Hutchison. Hutchison did not have any contraband or drug paraphernalia on his person or in his car when he was detained. According to Hutchison, the State failed to establish that he had a right to possess the place where the drugs were found. The property in question was owned by Hutchison's mother, not Hutchison. The State did not present any direct evidence that Hutchison lived at the premises; in fact, several

5

defense witnesses testified that Hutchison lived at another of his mother's properties. The address of the other property is the one used on Hutchison's driver's license. In his sufficiency argument, Hutchison handles the statements in two ways: he claims that they are inadmissible because they resulted from a custodial interrogation and that they are ambiguous, that is, they "can just as likely be read as innocuous and non-incriminating statements."

The admissibility of the incriminating statements is not relevant to the issue of the evidence's sufficiency. In conducting a sufficiency review, we consider all of the evidence, both admissible and inadmissible, that the jury was permitted to consider. *Conner v. State*, 67 S.W.3d 192, 197 (Tex. Crim. App. 2001); *Johnson v. State*, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993). Thus, Hutchison's first and second statements, and the key delivery, must be considered in determining whether the evidence is sufficient to establish knowing possession, regardless of whether those pieces of evidence were admissible. Also, Texas does not recognize the as-consistent-with-innocent-activity test, and the State is not obligated to disprove every reasonable alternative hypothesis. *See Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim. App. 1997) (rejecting as-consistent-with-innocent-activity test); *Brown v. State*, 911 S.W.2d 744, 748 (Tex. Crim. App. 1995) (State need not disprove every reasonable alternative hypothesis).

Although both Hutchison and the State focus on whether there is sufficient evidence that Hutchison lived at the house, the State was not required to prove his residence in the house where the drugs were found or even that he had exclusive possession of the house. The State had to prove merely that Hutchison knowingly had control, management, custody, or care of contraband. Before the search, the police observed Hutchison leave the house, return, enter

6

without knocking, and then leave again. Hutchison provided the police with a set of keys that unlocked not only the entry doors, but also the lock on the bedroom containing the drugs. A letter addressed to Hutchison at 213 South Houston Street was located in the bedroom. Hutchison also signed a Booking Report which listed "213 Houston St." as his address.[4] The State established that Hutchison had access to the house and bedroom where the contraband was discovered. These are strong links to the contraband.

In addition to establishing Hutchison had keys to gain access to the contraband, the record contains other links tending to support a finding of possession. When Hutchison was searched incident to his arrest, he had $1,600.00 cash on his person. He made incriminating statements to the officers admitting ownership of the drugs. After being detained and informed that the officers had an arrest warrant for him and a search warrant on the house, Hutchison stated, "I've just been doing what I've been doing for a little extra money." In context, this statement is not ambiguous and can reasonably be understood to refer to the contraband. And then there are the keys that unlocked the house's front door and the padlocked bedroom. Hutchison also stated that everything he had was in his "bedroom in a safe or in his closet." The drugs were found in an open safe located in the bedroom closet.

The number of links present is not as important as the degree to which they tend to link the defendant to the controlled substance. *Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). The record established that Hutchison had a right to possess the property

---

[4]Hutchison argues the record is devoid of any evidence concerning who provided this information or even who filled out the form. As pointed out by the State, the form bears Hutchison's signature and there is no evidence Hutchison contested this address at the time. A rational juror could have concluded Hutchison acknowledged the address as correct.

7

in question, possessed $1,600.00 in cash, and made incriminating statements which strongly connected him to the contraband. While one may characterize the links as being few, the quality of the links here sufficiently connects Hutchison with the drugs and allows rational jurors to find knowing possession by Hutchison. The evidence is legally sufficient.

*(2)*     *The Jury Instruction Was Not Erroneous*

Over Hutchison's general objection, the trial court gave an instruction on possession by multiple persons. Hutchison claims that instruction on joint possession was improper, because there was no evidence of joint possession, or at least none produced by the State. Because there was evidence of joint possession, the instruction was not objectionable on that basis.

At trial, the main defensive theory was that Darrin "Skeeter" Boyd, who lived at the house without paying rent, possessed the drugs. Over Hutchison's objection, the trial court instructed the jury that possession need not be exclusive and that two or more people can simultaneously possess contraband. According to Hutchison, the State was not entitled to this instruction because the record contains no evidence of joint possession and, alternatively, the State failed to affirmatively introduce the evidence of joint possession.

Hutchison argues that the record does not contain evidence of joint possession, but merely some evidence of exclusive possession by Hutchison and some evidence of exclusive possession by Boyd. Additionally, Hutchison points out that the State failed to mention the theory of joint possession in its closing argument. At trial, Hutchison introduced evidence that he did not own the property in question and did not live at the property in question. Hutchison argued that he merely managed the property for his mother and that the drugs probably belonged

8

to the tenant, Boyd. Various witnesses testified that Boyd lived at the house. During the State's cross-examination, Jannelle Cowger, Hutchison's girlfriend who lived "four or five houses down" from the premises, admitted that Hutchison was often present at the house during the daytime. When asked if Hutchison was present every day, Cowger affirmed, "[I]t might be every day but not long."

It is well established that possession need not be exclusive to be criminal. *See, e.g.*, *Hausman v. State*, 480 S.W.2d 721, 723 (Tex. Crim. App. 1972); *Jackson v. State*, 833 S.W.2d 220, 222 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). The links established by the evidence are sufficient if they show that the defendant knowingly exercised control, custody, management, or care over it. *Evans*, 202 S.W.3d at 161. Further, a jury is entitled to make reasonable inferences from the evidence. *Hooper*, 214 S.W.3d at 13. As argued by the State, a jury could have reasonably inferred that either or both Hutchison and Boyd knowingly exercised control, custody, management, or care over the contraband. Evidence that multiple persons exercised control, custody, management, or care of the contraband is sufficient to prove possession by one of them. *Alvarez v. State*, 813 S.W.2d 222, 224 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd). This record contains some evidence from which a rational jury could conclude that there was joint possession of the drugs.

Hutchison alternatively argues that the joint-possession instruction was improper because, according to Hutchison, the State must affirmatively introduce evidence of joint possession to be entitled to a jury instruction on the issue. The evidence of joint possession in this case was introduced by Hutchison rather than the State. Hutchison's argument is that the

9

triggering mechanism for an instruction on joint possession is not just any evidence of joint control, but is only joint-control evidence affirmatively offered by the State.

Hutchison cites only *Alvarez* to support this argument. *See Alvarez*, 813 S.W.2d 222.

> Possession of the controlled substance does not need to be exclusive and evidence which shows the accused jointly possessed the contraband with others is sufficient. . . . Therefore the State may prevail by offering evidence that the accused was one of a group that knowingly exercised care, control, custody or management of the controlled substance.

*Id*. at 224. Hutchison argues,

> The noun controlling the phrase "by offering evidence" is the "State." From that it would appear that, absent something in the State's evidence that shows the presence and/or involvement of some other person or persons along with the accused, the issue of "joint possession" does not go to the jury. Moreover it makes no sense - as a form of logic - to assert that A is the suspect but put on no evidence of the involvement of B, and yet to urge the jury to find that A was working with B.

The argument does not persuade us. *Alvarez* was referring to the State's evidentiary burden—not discussing the source of evidence required to trigger an instruction on joint possession. *Id*. The Fourteenth Court of Appeals used "State" as a noun because the State has the obligation to prove beyond a reasonable doubt the crime charged. Nothing suggests that the Fourteenth Court of Appeals intended to trigger a jury-instruction requirement only with evidence tendered by the State. *Alvarez* provides no support for Hutchison's argument.

The only example we are aware of where the proponent of a jury instruction may be required to affirmatively introduce evidence is a situation described in Articles 38.22 and 38.23 concerning illegally obtained evidence. TEX. CODE CRIM. PROC. ANN. arts. 38.22 (West Supp. 2013), 38.23 (West 2005). The Texas Court of Criminal Appeals has held that, to get an

10

instruction on illegally obtained evidence, there must be a fact issue that the defense has affirmatively contested; in such a circumstance, cross-examination is insufficient to qualify as an affirmative contest. *Madden v. State*, 242 S.W.3d 504, 514 (Tex. Crim. App. 2007); s*ee Hamal v. State*, 390 S.W.3d 302, 306 (Tex. Crim. App. 2012). Although the court has not explicitly held that the defense must introduce the evidence to affirmatively contest that issue, logically, most circumstances will require the defense to introduce the evidence. Academic commentators have concluded the affirmatively-contest requirement requires the defendant to "affirmatively introduce evidence." 43 George E. Dix & Robert O. Dawson, *Texas Practice: Criminal Practice & Procedure* § 44:41 (West 2011). We emphasize, though, that the courts have not yet explicitly limited the term "affirmatively contest" to require the defense to introduce evidence in that circumstance.

As far as we can tell, in every other type of jury instruction—defenses, affirmative defenses, and party liability—there is no requirement that the instruction's proponent be the party that introduces the evidence. If the record contains sufficient evidence raising a certain issue, the instruction on that issue should be given, regardless of which party tendered the evidence. *See, e.g*, *Bell v. State*, 693 S.W.2d 434, 442 (Tex. Crim. App. 1985); *Booth v. State*, 679 S.W.2d 498, 500 (Tex. Crim. App. 1984) ("it makes no difference whether such evidence or testimony was produced by the prosecution or the accused"); *see also Watson v. State*, 693 S.W.2d 938, 941 (Tex. Crim. App. 1985); *Payne v. State*, 194 S.W.3d 689, 698 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).

Hutchison has not provided us with any authority or any policy reason for a requirement that the State must affirmatively introduce evidence to be entitled to a joint-possession jury instruction. We have been unable to find any support for this alternative argument in Texas caselaw. We conclude that the State was not required to affirmatively introduce evidence of joint possession to be entitled to the instruction.

Hutchison's instruction arguments assigned for our review[5]—whether the record contains some evidence of joint possession and whether the State had to affirmatively introduce evidence of joint possession—are without merit. The trial court did not err in this instruction as claimed by Hutchison.

*(3)*      *The Record Does Not Demonstrate the Lack of Harmful Error in the Admission of Evidence*

Before trial, Hutchison sought to suppress his two statements and the physical act of delivering his keys to police. At the pretrial hearing, the trial court concluded Hutchison was under arrest and granted a motion to suppress the second statement but not the first. During trial, the State, over Hutchison's objection, asked the trial court to reconsider and convinced the trial court the second statement was admissible because it was partially corroborated. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(c) (West Supp. 2013) (partial-corroboration exception).

Hutchison argues that the trial court harmfully erred by failing to suppress his statements and the physical act of delivering the keys. Hutchison claims these statements and the act were made while he was in custody, while he was being interrogated, and without his being given

---

[5]Our analysis is limited to the issues presented. We express no opinion concerning whether, for example, the instruction may contain other errors not assigned for our review.

*Miranda* warnings, codified in Article 38.22, Section 2(a). *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a). Hutchison also complains about the lack of a recording in violation of Article 38.22, Section 3(a). *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a). There is no claim that Hutchison received any *Miranda* warning.

We sustain one of Hutchison's claims as to the admission of evidence, because (a) Hutchison was in custody, and—although (b) the first statement was volunteered, not a result of interrogation, and (c) delivering the keys was nontestimonial—(d) corroboration of the second statement does not make it admissible, (e) the second statement should have been suppressed, and (f) the record does not establish beyond a reasonable doubt that the error in admitting the second statement was harmless.

We review a trial court's ruling on a motion to suppress for an abuse of discretion and overturn that ruling "only if it is outside the zone of reasonable disagreement." *Martinez v. State*, 348 S.W.3d 919, 922 (Tex. Crim. App. 2011). We approach our review with two standards, "giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely on the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations." *Id*. at 922–23.

Under both the Federal constitutional standard and the Texas Confession Statute,[6] evidence obtained as a result of a custodial interrogation is inadmissible unless the State proves

---

[6]*See* TEX. CODE CRIM. PROC. ANN. art. 38.22. "If a statement is involuntary as a matter of federal constitutional law, it is also involuntary for purposes of article 38.22." *Vasquez v. State*, 411 S.W.3d 918 (Tex. Crim. App. 2013). Article 38.22 provides greater protection than the Fifth Amendment. The Texas Court of Criminal Appeals has recognized that fact scenarios exist that raise a state-law claim of involuntariness even though they do not raise a

the officer gave proper warnings[7] and shows an affirmative waiver of rights by the accused.  *See Miranda*, 384 U.S. at 444; *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22; *Ramos v. State*, 245 S.W.3d 410, 418 (Tex. Crim. App. 2008).  It is uncontested *Miranda* or similar warnings were not provided in this case.  Therefore, the question as to each statement is whether it was the result of custodial interrogation.

The trial court ultimately denied Hutchison's motion to suppress.  At the suppression hearing, the trial court initially granted the motion as it pertained to the second statement because, it determined, Hutchison was under arrest at the time and gave the second statement in response to custodial interrogation.  The trial court ruled that the first statement did not result from a custodial interrogation and was, therefore, admissible.  At trial, the trial court, at the request of the State, reconsidered[8] suppression of the second statement, and an additional dialogue occurred:

> THE COURT:  All right.  I've read the transcript and reread the letter of April 11th and looked at that law.  The focus at the time of the hearing was whether certain statements were result of custodial interrogation and when the defendant was in custody.  And the focus of the Court was, you know, after he was in custody any statement he made would not be admissible.  Now, the State never urged this 38.22(c) at that hearing.  Do you agree with that?

---

federal constitutional claim.  *See Oursbourn v. State*, 259 S.W.3d 159, 172 (Tex. Crim. App. 2008).  None of these scenarios are alleged in this case.

[7]"The warnings provided in Section 2(a) are virtually identical to the *Miranda* warnings, with one exception—the warning that an accused has the right to terminate the interview at any time as set out in Section 2(a)(5) is not required by *Miranda*."  *Herrera v. State*, 241 S.W.3d 520, 526 (Tex. Crim. App. 2007) (citations omitted).  As long as the substance of the warnings are adequately communicated, the failure to give the warnings precisely as set forth in *Miranda* does not invalidate a subsequent confession.  *See California v. Prysock*, 453 U.S. 355, 360–62 (1981); *see also Clark v. State*, 627 S.W.2d 693, 704 (Tex. Crim. App. 1982) (op. on reh'g).

[8]A trial court has discretion to reconsider its earlier interlocutory suppression ruling.  *See Black v. State*, 362 S.W.3d 626, 633 (Tex. Crim. App. 2012).

[The State]: I do agree with that, Your honor.

THE COURT: All right. Nevertheless, I mean, 38.22(c) says what it says. And I believe under that theory the statements are admissible, so I'm going to allow the statement to come in under 38.22(c).

Hutchison reargued his motion to suppress, and the trial court responded, "I think you have preserved the error. And I note your objection and exception to the Court's ruling." Although the trial court did not explicitly rule at trial whether the physical act of handing over the keys was admissible,[9] its trial rulings implicitly denied suppression of the physical act of delivering the keys.[10]

The State argues we must defer to the trial court's finding that the first statement was not the result of a custodial interrogation. That finding, though, is not a finding of fact but a mixed question of law and fact.[11] The trial court found that Hutchison was under arrest. Although the State concedes Hutchison was in custody[12] when he provided the second statement, the State does not concede Hutchison was in custody when he gave the first statement. The State, though, provides no argument or authority to support the conclusion that Hutchison was not in custody. The State argues merely that, even if Hutchison were in custody at the time, the first statement

---

[9]In its findings of fact and conclusions of law, the trial court found the delivery of the keys to be nontestimonial.

[10]*See* TEX. R. APP. P. 33.1(a) ("ruled on the request, objection or motion, either expressly or implicitly"); *Gutierrez v. State*, 36 S.W.3d 509, 510 (Tex. Crim. App. 2001) (court of appeals erred in not considering whether an implicit ruling was made); *State v. Kelley*, 20 S.W.3d 147, 153 n.3 (Tex. App.—Texarkana 2000, no pet.).

[11]The Texas Court of Criminal Appeals has recognized a custody decision is a mixed question of law and fact. *Herrera*, 241 S.W.3d at 526. The court has instructed that we only grant deference to questions of historical fact which depend on credibility and demeanor. *Id.* at 526–27. "Conversely, when the questions of historical fact do not turn on credibility and demeanor, we will review a trial judge's 'custody' determination de novo." *Id.* at 527.

[12]The State does not concede the second statement was the result of custodial interrogation.

15

was not the result of a custodial interrogation. We will first determine whether the trial court erred in finding that Hutchison was in custody.

*(a)  Hutchison Was in Custody*

If a reasonable person would believe his or her freedom of movement was restrained to the degree associated with a formal arrest, an interrogation conducted during that time is custodial. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex. Crim. App. 1996); *Rodgers v. State*, 111 S.W.3d 236, 239–41 (Tex. App.—Texarkana 2003, no pet.). In determining whether an interrogation is custodial, we look to the objective circumstances, not to the subjective views harbored by either the interrogating officer or the person being questioned. *See Stansbury v. California*, 511 U.S. 318, 323 (1994).

There are four general situations in which an arrest may have occurred: (1) if the defendant was physically deprived of his or her freedom of action in any significant way, (2) if law enforcement officers told the defendant that he or she could not leave, (3) if law enforcement officers created a situation that would lead a reasonable person to believe that freedom of movement was significantly restricted, and (4) if there was probable cause to arrest, the existence of probable cause was "manifested to the suspect," and law enforcement officers did not tell defendant that he or she was free to leave. *Dowthitt*, 931 S.W.2d at 255. Unlike the first three situations, the fourth situation does not automatically establish an arrest, but rather must be considered with other circumstances to determine whether the combined effect would lead a reasonable person to believe he or she is under restraint to the degree associated with an arrest. *Id.*; *see Martinez v. State*, 171 S.W.3d 422, 430 (Tex. App.—Houston [14th Dist.] 2005, no pet).

16

The determination should be based entirely on objective circumstances. *Dowthitt*, 931 S.W.2d at 254.

Officers had detained Hutchison,[13] had informed Hutchison of the existence of the arrest warrant, and had not informed him that he was free to leave. Further, Hutchison had submitted to the officers' authority.[14] These are findings of fact which depend on credibility and demeanor, and the record contains ample support for the trial court's findings. We will defer to these findings. Based on these findings of historical fact, our de novo review of the trial court's legal conclusions agrees with the trial court's conclusion that Hutchison was in custody. The fact that Hutchison was in custody, though, does not mean all the statements were the result of custodial interrogation.

### (b) The First Statement Was Volunteered, *Not a Result of Interrogation*

The trial court concluded the first statement, though made while Hutchison was in custody, was not the result of interrogation. Custodial interrogation is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda*, 384 U.S. at 444. *Miranda* did not hold that volunteered statements which are not the result of interrogation are inadmissible. Rather, as the court explained,

---

[13]We caution that "generally, a routine traffic stop does not place a person in custody for *Miranda* purposes." *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). A traffic stop, however, may escalate into a custodial detention when formal arrest ensues or a detainee's freedom of movement is restrained to the degree associated with a formal arrest. *Id*.

[14]An "arrest" occurs "when a person's liberty of movement is successfully restricted or restrained, whether this is achieved by an officer's physical force or the suspect's submission to the officer's authority." *Medford v. State*, 13 S.W.3d 769, 773 (Tex. Crim. App. 2000).

> The fundamental import of the privilege while an individual is in custody is not whether he is allowed to talk to the police without benefit of warnings and counsel, but whether he can be interrogated. There is no requirement that police stop a person who enters a police station and states that he wishes to confess to a crime, or a person who calls the police to offer a confession or any other statement he desires to make. Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today.

*Id.* at 478 (footnote omitted).

The trial court found the first statement was volunteered by Hutchison. The trial court's factual finding is supported by the record and is entitled to deference.[15] The trial court also correctly concluded a failure to *Mirandize* a defendant does not prevent use of a volunteered statement. A statement that is volunteered instead of given in response to questioning is not subject to *Miranda* warnings. *Warren v. State*, 377 S.W.3d 9, 17 (Tex. App.—Houston [1st Dist.] 2011, pet. ref'd); *Ruth v. State*, 167 S.W.3d 560, 570 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd). Since the first statement was not the result of interrogation, it was properly admitted.[16]

---

[15]Because a custody determination presents a mixed question of law and fact, appellate courts afford almost total deference to questions of historical fact that turn on credibility and demeanor but otherwise conduct a de novo review. *Herrera*, 241 S.W.3d at 526–27.

[16]The requirements of the Texas Confession Statute have not been triggered here. That statute, including the requirement that oral statements be recorded, requires the statement to be the result of a custodial interrogation. *See* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) ("made as a result of custodial interrogation"); *Wilkerson v. State*, 173 S.W.3d 521, 529 n.24 (Tex. Crim. App. 2005) (noting in dicta that Article 38.22, Section 3(a) does not apply in absence of custodial interrogation); *Paez v. State*, 681 S.W.2d 34, 37 (Tex. Crim. App. 1984) (Article 38.22, Section 3(a) does not apply in absence of custodial interrogation). Because a volunteered statement is not the result of a custodial interrogation, the first statement was not required to be recorded to be admissible.

*(c)     Delivering the Keys Was Nontestimonial*

The State argues that delivering the keys to the entry door and bedroom padlock is not a statement because it is not a representation of fact.  The Fifth Amendment protects the accused not only against compelled verbal statements, but also against compelled nonverbal communications.   The Fifth Amendment, though, protects physical acts only if they are testimonial in nature.  *United States v. Hubbell*, 530 U.S. 27, 34 (2000); *Pennsylvania v. Muniz*, 496 U.S. 582, 595–98 (1990);[17] *Doe v. United States*, 487 U.S. 201, 210 (1988).  The focus of the Fifth Amendment protections is on the "extortion of information from the accused."  *Couch v. United States*, 409 U.S. 322, 328 (1973); *see Doe*, 487 U.S. at 210.  Examples of physical acts that are nontestimonial include the giving of a blood sample, voice sample, or handwriting exemplar.  *Muniz*, 496 U.S. at 595–98; *United States v. Dionisio*, 410 U.S. 1, 7 (1973); *Gilbert v. California*, 388 U.S. 263, 266–67 (1967); *see Doe*, 487 U.S. at 210 n.9 (person could be compelled to provide key to strongbox but not combination to safe).   A physical act is testimonial in nature if it forces the accused "to disclose the contents of his own mind."  *Curcio v. United States*, 354 U.S. 118, 128 (1957); *see Doe*, 487 U.S. at 210.

We agree with the State's argument that the physical act at issue here is not protected by the Fifth Amendment.  The physical act in this case was not communicative in nature.  The

---

[17]Although only four justices agreed on the entire opinion in *Muniz*, five justices agreed on a single rationale explaining the result.  This agreed rationale includes the principle cited here.  While Texas courts employ a traditional approach to plurality opinions, *see, e.g.*, *Pearson v. State*, 994 S.W.2d 176, 177 n.3 (Tex. Crim. App. 1999), the United States Supreme Court has adopted the narrowest grounds approach for plurality opinions.  That Court has instructed that, "[w]hen a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds. . . .'"  *Marks v. United States*, 430 U.S. 188, 193 (1977) (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976) (Stewart, J., Powell, J., and  Stevens, J., concurring)); *accord O'Dell v. Netherland*, 521 U.S. 151, 160 (1997).  Since a single rationale was agreed on by five justices, the narrowest grounds clearly includes this issue, and *Muniz* is binding precedent concerning this issue.

physical act of handing the police officers the keys did not convey any information to them. Hutchison admits the act "did not lead to anything that Nippers and his fellow officers did not already know."[18] Any fact communicated by handing over the keys did not disclose the contents of Hutchison's mind. The physical act at issue is similar to providing a blood test. The production of the blood test is not incriminating; the incriminating fact is that the blood test matches the sample at the scene or reveals a high alcohol content, for example. In this case, the production of the key is not incriminating; the incriminating facts are that Hutchison possessed the keys and that the keys empower the holder to access the drugs. Similar to a blood test, the production of the keys does not reveal the contents of Hutchison's mind. Because there was no extortion of information from the accused, Hutchison's act in handing over the keys was nontestimonial and, therefore, properly admitted.

   *(d)     Corroboration of the Second Statement Does Not Make It Admissible*

The main problem is with the second statement, made while Hutchison was in custody in response to police statements designed to elicit information from Hutchison. The State convinced the trial court, and argues here, that the second statement was admissible because it was partially corroborated. According to the State, Article 38.22, Section (3)(c) provides an exception to the *Miranda* warnings codified in Article 38.22, Section 2(a). The State, however, fails to provide any relevant authority in support of this argument.[19] The Amarillo Court of

---

[18]Hutchison made this concession while responding to the State's interpretation of Article 38.22, Section 3(c). Regardless, this concession is still relevant to the issue of whether the physical act was testimonial.

[19]The State cites two cases in this section of its brief, both of which hold Article 38.22, Section 3(c) is an exception to prohibition of the oral statements contained in Article 38.22, Section 3(a). *See Port v. State*, 791 S.W.2d 103, 108

Appeals has explicitly rejected an argument similar to the State's argument and held Section 3(c) is not an exception to *Miranda* warnings. *See State v. Ortiz*, 346 S.W.3d 127, 136 (Tex. App.— Amarillo 2011), *aff'd on other grounds by* 382 S.W.3d 367, 372 (Tex. Crim. App. 2012). We agree. The State's argument is contrary to the plain language of the statute, is inconsistent with the interpretation of the Texas Court of Criminal Appeals, and would expose Article 38.22 to a constitutional challenge.

The plain language of Section 3(c) does demonstrate an intent to provide an exception to the writing or recording requirement for a statement. Section 3(c) provides, "Subsection (a) of the section shall not apply to any statement . . . ." This language indicates that the exception is applicable only to the same section of Article 38.22. The Texas Code of Criminal Procedure is one of the few remaining Texas codes that are composed of articles not sections. To further complicate the situation, a few of the articles in the Texas Code of Criminal Procedure are divided into sections, including the one involved here. Article 38.22 is divided into eight sections. The phrase "section" does not refer to the entire Article 38.22, but rather refers to just Section 3 of Article 38.22. Thus, the referenced "Subsection (a)" refers to Section 3(a) which prohibits the introduction of nonrecorded oral statements. The *Miranda* warnings are codified in a different section of Article 38.22—Section 2(a). If Section 3(c) had been intended to apply to Section 2(a), it would have provided that "Paragraph (a) of the ***preceding*** section shall not apply . . . ." The Statute, though, does not contain such language. The plain language of Section 3(c)

(Tex. Crim. App. 1990); *Santana v. State*, 714 S.W.2d 1, 14 (Tex. Crim. App. 1986). Neither case supports a conclusion that Section 3(c) is an exception to the *Miranda* requirement codified in Article 38.22, Section 2(a).

21

clearly indicates it is an exception only to prohibition of oral nonrecorded statements contained in Section 3(a).

Next, although the Texas Court of Criminal Appeals has not explicitly rejected the State's argument, the argument is inconsistent with the court's precedent. The Texas Court of Criminal Appeals has interpreted Section 3(c) of Article 38.22 as an exception to the writing or recording requirement contained in Section 3(a). *See, e.g.*, *Woods v. State*, 152 S.W.3d 105, 117 (Tex. Crim. App. 2004); *Almanza v. State*, 839 S.W.2d 817, 818 (Tex. Crim. App. 1992); *Romero v. State*, 800 S.W.2d 539, 544 (Tex. Crim. App. 1990); *Port*, 791 S.W.2d at 108; *Santana*, 714 S.W.2d at 14.

Finally, the interpretation of Article 38.22 urged by the State would require an exception to *Miranda* which has not been recognized by the United States Supreme Court. *See Ortiz*, 346 S.W.3d at 136. There are three exceptions to *Miranda*—(1) the public safety exception,[20] (2) when the suspect is unaware that he or she is dealing with a state agent (i.e. undercover officer),[21] and (3) the booking questions exception.[22] The United States Supreme Court has not recognized an exception to *Miranda* when the statement is partially corroborated. It is unlikely that such an exception would be recognized. In *Miranda*, the United States Supreme Court held that "the defendant's constitutional rights have been violated if his conviction is based, in whole

---

[20]*New York v. Quarles*, 467 U.S. 649, 655–57 (1984) (public safety exception).

[21]*Illinois v. Perkins*, 496 U.S. 292, 294 (1990) (*Miranda* warnings not required because suspect unaware he or she was dealing with state officials).

[22]*Muniz*, 496 U.S. at 601 (plurality op.) (plurality suggesting an exception exists for booking questions); *Alford v. State*, 358 S.W.3d 647, 660 (Tex. Crim. App. 2012) (recognizing booking-question exception).

or in part, on an involuntary confession, *regardless of its truth or falsity*." *Miranda*, 384 U.S. at 465 n.33 (emphasis added).

The State's interpretation would, therefore, expose Article 38.22 to a constitutional challenge. The Texas Code Construction Act instructs us, if possible, to construe statutes so they will pass constitutional muster. TEX. GOV'T CODE ANN. § 311.021 (West 2013). The State's interpretation would create a conflict with established constitutional law. The plain language of the statute, though, would not create a clear conflict with established precedent of the United States Supreme Court. By following the plain language of the statute, we also comply with this principle of statutory construction.

While partial corroboration of a statement excuses the lack of a writing or recording, that corroboration does not provide an exception to the *Miranda* warnings codified in Section 38.22, Section 2(a). It is not necessary for us to decide whether the State's "corroboration" led to the discovery of new facts.[23]

*(e)    The Second Statement Should Have Been Suppressed*

The State argues that the second statement was not the result of an interrogation. The United States Supreme Court has clarified the meaning of a custodial interrogation:

---

[23]Hutchison argues that the partial corroboration exception does not apply because Hutchison's act of handing over the keys "did not lead to anything that Nippers and his fellow officers did not already know." Hutchison cites three cases in support of his argument. *Almanza*, 839 S.W.2d at 818 (defendant nodded toward dresser where drugs were later located); *Ebert v. State*, 848 S.W.2d 261 (Tex. App.—Corpus Christi 1993, pet. ref'd) (defendant pointed to the drugs and paraphernalia in plain view and already observed by officers); and *Romero*, 800 S.W.2d at 544 (production of knife did not corroborate statement). The exception contained in Section 3(c) requires the discovery of items or information previously unknown to the police. *Romero*, 800 S.W.2d at 545. Because our conclusion is determinative, it is unnecessary to address Hutchison's argument.

> [T]he Miranda safeguards come into play whenever a person in custody is subjected to either express questioning or its functional equivalent. That is to say, the term "interrogation" under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. The latter portion of this definition focuses primarily on the perceptions of the suspect, rather than the intent of the police. This focus reflects the fact that the *Miranda* safeguards were designed to vest a suspect in custody with an added measure of protection against coercive police practices, without regard to objective proof of the underlying intent of the police. A practice that the police should know is reasonably likely to evoke an incriminating response from a suspect thus amounts to interrogation. But, since the police surely cannot be held accountable for the unforeseeable results of their words or actions, the definition of interrogation can extend only to words or actions on the part of police officers that they should have known were reasonably likely to elicit an incriminating response.

*Rhode Island v. Innis*, 446 U.S. 291, 300–02 (1980); *see Alford*, 358 S.W.3d at 653. To summarize, custodial interrogation includes express questioning of a suspect as well as words or actions by police that the police should know are reasonably likely to elicit an incriminating response. *Innis*, 446 U.S. at 300–02; *Jones v. State*, 795 S.W.2d 171, 174 (Tex. Crim. App. 1990).

Hutchison's second statement was uttered after the officers had encouraged him to provide them information to help himself. We conclude that the second statement was made in response to a statement the officers knew or should have known was reasonably likely to elicit an incriminating response. As such, the second statement was the result of custodial interrogation and should have been suppressed.

*(f)*     *The Record Does Not Establish Beyond a Reasonable Doubt that the Error in Admitting the Second Statement Was Harmless*

Hutchison argues that admitting the second statement—informing the police "that everything he had was in his bedroom in a safe or in his closet"—harmed him, entitling him to a new trial. Hutchison argues the error likely influenced the jury's decision on whether he possessed the contraband. Although the State does not argue the error was harmless, the Texas Court of Criminal Appeals has instructed that all errors, except for structural errors, warrant a harm analysis. *See Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997); *see also Pruitt v. State*, 683 S.W.2d 537, 541–42 (Tex. App.—Dallas 1984, no pet.). Thus, we are required to conduct such a harm analysis.

As we are faced with a constitutional error, our standard of review is governed by Rule 44.2(a) of the Texas Rules of Appellate Procedure. *Clay v. State*, 240 S.W.3d 895, 904 (Tex. Crim. App. 2007). We must reverse the judgment unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a); s*ee Clay*, 240 S.W.3d at 904. Constitutional error does not contribute to the conviction or punishment if the jury's verdict would have been the same even if the erroneous evidence had not been admitted. *Clay*, 240 S.W.3d at 904. Error, though, that has more than a "slight effect" is not, beyond a reasonable doubt, harmless. *Phillips v. State*, 193 S.W.3d 904, 913 (Tex. Crim. App. 2006).

Several nonexclusive factors can be considered when conducting a harm analysis under Rule 44.2(a), including (1) the nature of the error, (2) the extent the error was emphasized by the State, (3) the weight a juror would probably place on the error, and (4) the error's probable

25

collateral consequences. *Snowden v. State*, 353 S.W.3d 815, 822 (Tex. Crim. App. 2011). When conducting a harm analysis in the context of a *Miranda* error, we must "'judge the magnitude of the error in light of the evidence as a whole to determine the degree of prejudice to the defendant resulting from that error.'" *Jones v. State*, 119 S.W.3d 766, 777 (Tex. Crim. App. 2003) (quoting *United States v. Polanco*, 93 F.3d 555, 562–63 (9th Cir. 1996)).

"There is no set formula for conducting a harm analysis that necessarily applies across the board, to every case and every type of constitutional error." *Snowden*, 353 S.W.3d at 822 n.31. These factors "are not exclusive considerations in any particular case," and our inquiry should be "whether, or to what extent, the error may have contributed to the conviction" or increased the punishment. *Id.* at 822. The ultimate inquiry is "'whether, assuming that the damaging potential of the [inadmissible evidence] were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.'" *Id.* at 822 n.1 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)). "At bottom, an analysis for whether a particular constitutional error is harmless should take into account any and every circumstance apparent in the record that logically informs an appellate determination whether 'beyond a reasonable doubt [that particular] error did not contribute to the conviction or punishment.'" *Id.* at 822 n.31 (quoting TEX. R. APP. P. 44.2(a)). Bearing in mind that these factors are not the exclusive considerations and that the ultimate inquiry is the damaging potential of the error, we will use the *Snowden* factors to guide our analysis.

The first factor is the nature of the error. The error in this case violates established constitutional rights. Further, as argued by Hutchison, the error served as an important conduit

26

for the State to establish possession. The second statement was a clear admission that Hutchison knowingly possessed the contraband. This factor weighs toward a finding of harm.

The second factor is the extent the error was emphasized by the State. Hutchison argues the State's closing argument contains "eighteen explicit, overt, references" to the evidence in question. This number, though, includes both statements and references to the keys. As noted above, the trial court did not err in refusing to suppress the first statement or the physical act of handing the officers the keys. Only two of the eighteen references concern the second statement. The State's closing argument spanned approximately twenty-eight transcribed pages. Our harm analysis, though, is more concerned with the substantive effect of the State's emphasis than any numerical count of the references. Hutchison's statements lay at the heart of the State's case. They were the best evidence of possession, and the State extensively emphasized the fact that Hutchison's statements admitted guilt. Given that the second statement was the most explicit admission of guilt, the two references to it could have had an effect on the jury beyond the fact that it was the subject of just two of the State's eighteen references to the statements in general. This factor, too, weighs toward a finding of harm.

The third factor is the weight a juror would probably place on the error. In this factor, we should also consider whether the other evidence showed possession overwhelmingly as well as the character of the error and how it might be considered in connection with other evidence in the case. *Motilla v. State*, 78 S.W.3d 352, 359 (Tex. Crim. App. 2002). Beyond the second statement, the evidence linking Hutchison to the contraband was relatively strong, but not overwhelming, and in the second statement, he essentially confessed to the offense.

27

Juries give special weight to confessions. "'[A] defendant's own confession is probably the most probative and damaging evidence that can be admitted against him.'" *McCarthy v. State*, 65 S.W.3d 47, 56 (Tex. Crim. App. 2001) (quoting *Fulminante v. Arizona*, 499 U.S. 279, 296 (1991)).

> A confession is likely to leave an indelible impact on a jury. "If the jury believes that a defendant has admitted the crime, it will doubtless be tempted to rest its decision on that evidence alone, without careful consideration of the other evidence in the case. Apart, perhaps, from a videotape of the crime, one would have difficulty finding evidence more damaging to a criminal defendant's plea of innocence." *Fulminante*, 499 U.S. at 313 (Kennedy, J., concurring).

*Id.*

Certainly, the record contains other persuasive links between Hutchison and the contraband including the $1,600.00 in cash, Hutchison's possession of keys to the house and bedroom padlock, Hutchison's regular presence at the house, and Hutchison's acknowledgement that he managed the property for his mother. The first statement—"I've just been doing what I've been doing for a little extra money"—is a persuasive admission of personal involvement; though it might be argued to be a reference to his managing the property in question. The second statement, though, is a more explicit admission of guilt admitting simultaneously to personal involvement, the locations of the drugs, and his possession of them. The second statement was more damaging and probative than the first statement. Given the special weight juries tend to assign to confessions, the third factor weighs toward a finding of harm.

The fourth factor is the error's probable collateral consequences. This factor requires us to "contemplate such things as the disparaging of a sole defense," as well as the probable effect it may have had on punishment. *Higginbotham v. State*, 807 S.W.2d 732, 737 (Tex. Crim. App.

1991).  We conclude the error's probable collateral consequences would be minimal or nonexistent.  The error in this case concerns the sufficiency of evidence on guilt and, once a juror has determined guilt, the second statement was unlikely to have an adverse impact on the harshness of punishment.  A jury would likely acquit if they harbored any reasonable doubt, thus indicating that the error's effect on punishment would be minimal.  In fact, the second statement, which can be understood as Hutchison cooperating with police, might have lessened the jury's assessment of punishment.  We conclude the fourth factor weighs against a finding of harm.

After careful consideration of the above factors, we are unable to conclude that, beyond a reasonable doubt, the error was harmless.  Three of the four factors suggest a finding of harm.  A significant part of the State's case rested on Hutchison's admissions.  While other links did exist, these links provided an inconclusive connection to the contraband.  Hutchison's admissions made in his statements were far more persuasive than the other links to the contraband, and the second statement was notably more damning than the first statement.  As in *McCarthy*,[24] it is reasonable to believe that the confession contained in the second statement had an effect on the jury.  We are unable to conclude that, beyond a reasonable doubt, the error by the trial court did not contribute to the judgment in this case.  Hutchison is entitled to a new trial.

---

[24]*McCarthy*, 65 S.W.3d at 56 (finding admission of confession reversible error).

For the reasons stated, we reverse the judgment of the trial court and remand for proceedings consistent with this opinion.


                                        Josh R. Morriss, III
                                        Justice

Date Submitted:        January 2, 2014
Date Decided:          February 5, 2014

 Publish

30